IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAY BUITRON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No.  3:16-CV-503-B-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| **Defendant.** | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this social security appeal was automatically referred for full case management. Before the Court are *Plaintiff's Brief on Review of the Commissioner's Denial of Benefits Under Titles II and XVI of the Social Security Act*, filed May 26, 2016 (doc. 14), *Defendant's Response Brief*, filed June 17, 2016 (doc. 15), and *Plaintiff's Reply Brief*, filed July 7, 2016 (doc. 16).  Based on the relevant filings, evidence, and applicable law, the Commissioner's decision should be **AFFIRMED**.

## I.  BACKGROUND[1]

### A.  Procedural History

Ray Buitron (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner)[2] denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and for supplemental security income (SSI) under Title XVI

---

[1]  The background information is summarized from the record of the administrative proceeding, which is designated as "R."

[2]  At the time of filing of this appeal, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration, but she was succeeded by Nancy A. Berryhill beginning January 20, 2017.

of the Act.  (R. at 1,101.)  On May 31, 2013, Plaintiff filed his applications for DIB and SSI, alleging disability beginning on April 1, 2013.  (R. at 104.)  His claims were denied initially and upon reconsideration.  (R. at 160-66, 177-90.)  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and personally appeared and testified at a hearing on November 20, 2014.  (R. at 119-59.)  On March 21, 2015, the ALJ issued a decision finding that Plaintiff was not disabled and denying his claims for benefits.  (R. at 101-18.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council and included new medical evidence.  (R. at 1, 33-89.)  The Appeals Council determined that the new evidence did not provide a basis for changing the decision and denied his request for review on January 12, 2016, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-5.)  Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g).  (*See* doc. 1.)

**B.**   **Factual History**

**1.**   **Age, Education, and Work Experience**

Plaintiff was born on December 24, 1957, and was 56 years old at the time of the hearing before the ALJ.  (R. at 123-24.)  He left school in the 11th grade and never received a GED.  (R. at 124.)  He had past relevant work as an apartment maintenance supervisor.  (R. at 138-39.)

**2.**   **Medical Evidence**

On August 13, 2008, Plaintiff met with Dr. Arnold V. DiBella, M.D., for pain and swelling in both of his wrists.  (R. at 400-03.)  X-rays revealed wrist arthritis and carpal tunnel syndrome.  (R. at 401-02.)  One month later, Dr. DiBella performed carpal tunnel surgery on Plaintiff at the Baylor Surgicare Center.  (R. at 397-99.)  The surgery was successful and the "overall alignment of the wrists look[ed] good."  (R. at 393-96.)

On January 11, 2011, Plaintiff was admitted to the Hunt Regional Medical Center for back pain.  (R. at 512-14.)  The medical record noted that he was in "mild distress" but moved "quickly and easily."  (R. at 513.)  He was diagnosed with lumbar strain with sciatica and was prescribed pain medication.  (R. at 513-14.)

On May 31, 2012, Plaintiff was admitted to Hunt Regional Medical Center for neck pain. (R. at 406-09.)  His physical exam showed soft tissue tenderness, and he was diagnosed with acute cervical strain and neck strain.  (R. at 407-08.)  He was prescribed pain medication and instructed to return if the pain persisted.  (R. at 409.)

Between March 18, 2013, and December 16, 2013, Plaintiff received treatment from Mr. Brian Weber, PA-C.  (R. at 424-30, 452-58.)  Mr. Weber reported that Plaintiff had arthritis, depression with anxiety, hypertension, adult diabetes, and bipolar disorder.  (R. at 428.)  He noted that Plaintiff was well developed with no acute distress and a normal musculoskeletal system.  (R. at 426, 454-55.)  Mr. Weber suggested that Plaintiff consult with a pain management specialist and continue to take his current prescribed medication.  (R. at 430, 458)

On August 14, 2013, Plaintiff underwent a clinical interview and mental status examination by Dr. Linda S. Ludden, Ed.D.  (R. at 468-73.)  She noted that Plaintiff appeared alert throughout the interview and was cooperative in answering questions.  (R. at 468.)  Plaintiff self-reported that he was capable of caring for personal needs but had limited capacity for simple chores and could not handle his finances.  (R. at 469.)  Dr. Ludden reported that Plaintiff had a logical and goal-oriented thought process, an "appropriate-to-speech" affect, and was well-oriented to his surroundings.  (R. at 471-72.)  She further noted that his intelligence was "estimated to be average" with a satisfactory memory and concentration.  (R. at 472.)  She offered a guarded prognosis and diagnosed Plaintiff

with major depressive disorder, panic disorder, obsessive compulsive disorder, and impulse control disorder.  (R. at 472-73.)

On August 17, 2013, Plaintiff met with Dr. Mahir Patel, M.D., for an internal medicine evaluation.  (R. at 474-80.)  Dr. Patel noted that Plaintiff was in no acute distress and showed no immediate physical issues with his neck or back.  (R. at 475-76.)  He also reported that Plaintiff was alert with a clear thought process and displayed no memory or concentration issues.  (R. at 477.) His muscle strength was 5/5 for all major muscle groups except for his right wrist, fingers, and hand, which were assessed at 4/5.  (R. at 477.)  He reported that Plaintiff had swelling in his right wrist and right knee and could squat with "moderate difficulty," but he could dress and undress adequately well.  (R. at 478.)  Plaintiff's range of motion test results were normal with the exception of minor restrictions on his right wrist.  (R. at 478-79.)  Dr. Patel's overall impression was that there were manipulative limitations on Plaintiff's right side where he could only occasionally handle, feel, grasp, finger, bend, stoop, crouch, and squat; however, Plaintiff could be expected to sit and stand normally in an 8-hour workday.  (R. at 479-80.)

On September 23, 2013, Plaintiff was admitted to the Hunt Regional Medical Center for upper extremity pain and swelling.  (R. at 493-97.)  The medical records noted mild swelling, but his upper extremities were normal to inspection.  (R. at 494.)  He was diagnosed with arthritis and acute pain in his upper extremities and was prescribed pain medication.  (R. at 495-96.)

On September 11, 2013, Dr. Matthew Turner, Ph.D., a state agency medical consultant (SAMC), completed a medically determinable impairment and severity report for Plaintiff based upon the evidence on record.  (R. at 164-66.)  He diagnosed Plaintiff with affective disorders and diabetes mellitus based upon the medical evidence.  (R. at 164.)  He opined that Plaintiff had no

restrictions on activities of daily living, no episodes of decompensation, and only mild difficulties in maintaining social function and concentration.  (R. at 165.)

On February 6, 2014, Dr. Matthew Snapp, Ph.D., a SAMC, also completed a medically determinable impairment and severity report for Plaintiff based upon the evidence on record.  (R. at 183-84.)  He agreed with Dr. Turner that Plaintiff suffered from affective disorders and diabetes mellitus.  (R. at 183.)  He opined that Plaintiff had mild restrictions on activities of daily living and moderate difficulties in maintaining social functioning and concentration.  (R. at 183-84.)  On the same day, Dr. Michal Douglas, M.D., a SAMC, completed a residual functioning capacity (RFC) examination.  (R. at 185-86.)  He opined that Plaintiff had the following limitations: could occasionally lift and carry 50 pounds, could frequently lift and carry 25 pounds, could stand, walk, or sit for a total of 6 hours in an 8-hour workday, could occasionally climb ramps, ladders, ropes, and scaffolds, could frequently stoop, kneel, crouch, and crawl, and had limited handling and fingering manipulation with his right hand.  (R. at 186.)

Between June 4, 2014, and October 7, 2014, Plaintiff returned to treatment with Mr. Weber for his depression, diabetes, and hypertension.  (R. at 655-74.)  Plaintiff self-reported that his right shoulder was stiff and his hands were hurting.  (R. at 655.)  Mr. Weber noted that Plaintiff was well developed and nourished and was in no acute distress.  (R. at 659, 663.)  He suggested that Plaintiff continue his schedule of prescribed medication.  (R. at 667.)

On August 28, 2014, and October 3, 2014, Plaintiff received treatment at the Hunt County MHMR Center.  (R. at 677-91.)  He self-reported feelings of anxiety, panic attacks, and mood swings.  (R. at 678.)  Plaintiff had normal muscle strength and tone with a normal gait.  (R. at 681, 687.)  He also had an appropriate fund of knowledge with no abnormal thoughts or concentration

issues.  (R. at 683-84.)  He was instructed to continue his regiment of prescribed medications and was diagnosed with bipolar disorder, panic disorder, and obsessive disorder.  (R. at 688, 703.)

### 3.   Hearing Testimony

On November 20, 2014, Plaintiff, a medical expert (ME), and a vocational expert (VE) testified at a hearing before the ALJ. (R. at 119-59.)  Plaintiff was represented by an attorney. (R. at 122.)

#### a.   Plaintiff's Testimony

Plaintiff testified that he had left school in the 11th grade and never received a GED.  (R. at 124.)  He had been depressed because he was "so used to working and being active."  (R. at 134.)  He had experienced decreased appetite, sleep disturbances, feelings of worthlessness, thoughts of guilt, difficulty concentrating, and past thoughts of suicide.  (R. at 135-36.)  He also claimed to be suffering from post-traumatic stress disorder due to his "brothers being in Vietnam at the same time."  (R. at 136.)

He further testified that he had previously worked as an apartment maintenance supervisor until early 2012, when he had been laid off after his employer decided to downsize the company. (R. at 143-44.)  He had received unemployment benefits in the third and fourth quarter of 2012 and the first and second quarter of 2013.  (R. at 147.)  He was then re-hired in June 2013 by the same company but left later that year because "it just didn't work out" with his health, and his "work habits had just started dropping [his] performance."  (R. at 147.)

#### b.   ME's Testimony

The ME testified that he had never treated or examined Plaintiff but had reviewed all of the medical evidence on record with the exception of an exhibit that had been added only recently.  (R.

at 127.)  He explained that Plaintiff had a primary impairment of osteoarthritis involving several

different joints, chiefly both wrists, right knee, and his lumbar spine.  (R. at 128.)  Plaintiff also

suffered from non-severe impairments of obesity, diabetes, and hypertension. (R. at 129-30.) There

was no evidence of organ damage due to diabetes or hypertension.  (R. at 130.)

The ALJ then asked the ME to opine as to Plaintiff's physical RFC.  (R. at 131.)  The ME

stated that he "reasonably agree[d]" with the consultative examiner, but the report was not defined

in terms "such as moderate, mild."  (R. at 131.)  He opined that Plaintiff would be capable of

walking 4 hours out of an 8-hour workday, occasional pushing and pulling, frequent overhead

bilateral reaching, occasional handling and fingering, and no communicative/visual/environmental

limitations.  (R. at 132.)

### c.    VE's Testimony

The VE testified that based upon the record, Plaintiff had past relevant work as an apartment

maintenance supervisor, DOT 891.137-010 (light, skilled).  (R. at 138-39.)

The ALJ then asked the VE to consider a hypothetical individual of advanced age with an

11th grade education and skilled past relevant work with the following limitations: able to lift and

carry 10 pounds occasionally and less than 10 pounds frequently; able to stand for 4 hours, walk for

2 hours, and sit for 6 hours during an 8-hour workday; able to push and pull occasionally; able to

climb stairs occasionally but never scaffolds, ladders, or ropes; able to stoop, bend, balance, crouch,

and crawl occasionally; never able to kneel; able to perform overhead reaching in all directions

frequently; able to perform handling and fingering occasionally; able to perform simple, routine, and

repetitive tasks; able to respond appropriately to supervisors and coworkers; able to maintain

concentration, persistence, and pace for at least 2 hours at a time for a total 8 hours in an 8-hour

workday; and could tolerate routine changes in a work setting.  (R. at 140-41.)  The VE responded

that this hypothetical man could not perform Plaintiff's past relevant work as an apartment

maintenance supervisor and had no transferability of skills.  (R. at 141.)

C.    **ALJ's Findings**

The ALJ issued her decision denying benefits on March 21, 2015.  (R. at 104-14.)  At step

one,[3] she determined that Plaintiff had not engaged in substantial gainful activity since his alleged

onset date of April 1, 2013.  (R. at 106.)  At step two, the ALJ found that the medical evidence

established that Plaintiff had a severe combination of the following impairments: osteoarthritis of

the bilateral wrists, lumbar spine, and right knee.  (R. at 107.)  At step three, the ALJ concluded that

Plaintiff's severe impairments or combination of impairments did not meet or equal the requirements

for presumptive disability under the listed impairments in 20 C.F.R. Part 404.  (R. at 109.)

Next, the ALJ determined that Plaintiff's allegations regarding his level of pain and

subjective complaints were not entirely credible.  (R. at 110.)  The ALJ determined that Plaintiff

retained the RFC to perform less than the full range of light work with the following limitations: he

could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand, walk, and sit for

6 hours during an 8-hour workday; could push and pull frequently; could operate foot control

frequently; could climb stairs, ramps, ladders, ropes, and scaffolds occasionally; could stoop, bend,

balance, crouch, kneel, and crawl frequently; could perform overhead reaching and reaching in all

directions frequently; and could perform handling and fingering frequently.  (R. at 109.)

At step four, the ALJ determined that Plaintiff could return to his past relevant work

experience as an apartment maintenance supervisor because it did not require the performance of

---

[3] The five-step analysis used to determine whether a claimant is disabled under the Social Security Act is described more specifically below.

work-related activities precluded by Plaintiff's RFC.  (R. at 113.)  Because the ALJ found that Plaintiff could return to his past relevant work, she did not reach step five.  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from his alleged onset of disability date of April 1, 2013, through the date of her decision.  (R. at 114.)

**D.**     **New Evidence Submitted to the Appeals Council**

Plaintiff timely appealed the ALJ's decision to the Appeals Council and submitted new evidence consisting of medical records on his physical impairments from Greenville Community Health Center dated October 13, 2015, through November 13, 2015, and medical records on his mental impairments from Tarrant County MHMR dated March 12, 2015, through December 7, 2015. (R. at 8-21, 33-89.)

The Appeals Council did not consider the evidence from Tarrant County MHMR dated April 16, 2015, through December 7, 2015, and from Greenville Community Health Center dated October 13, 2015, because it was "new information about a later time" that did not affect the decision from March 21, 2015.  (R. at 2.)  It did consider the medical records from Tarrant County MHMR dated March 12, 2015, but did not find that this new evidence provided a basis for changing the ALJ's decision.  (R. at 2.)

## II. ANALYSIS

**A.**     **Legal Standards**

**1.**     **Standard of Review**

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision.  *Id.*

## 2.     Disability Determination

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.3d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*,

954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" will not be found to be disabled.

4.    If an individual is capable of performing the work he had done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v)).   Under the first four steps of the analysis, the burden lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence.  *Froga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.

1987).

**B.**     **Issues for Review**

Plaintiff presents two issues for review:

A.     Whether the ALJ's finding that [Plaintiff's] mental impairments were non-severe is supported by the record.

B.     Whether the ALJ's RFC finding is supported by substantial evidence.

(doc. 14 at 1.)

**C.**     **Severe Impairment**

Plaintiff argues that the ALJ erred by finding that his mental impairments were non-severe. (doc. 14 at 6.)

At step two of the sequential evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii),(c). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010). Under the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's

ability to work." *Id.* at 1101.[4]  In other words, "the claimant [need only]  make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work." *Anthony v. Sullivan*, 954 F.2d 289, 294 n. 5 (5th Cir. 1992) (citation omitted). When determining whether a claimant's impairments are severe, an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity.  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F .R. § 404.1523).  The claimant also has to demonstrate that the severe impairment is expected to last for at least 12 months.  *See* 42 U.S.C. § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

Here, the ALJ noted that Plaintiff had been diagnosed with major depressive disorder without psychosis, panic disorder with agoraphobia, impulse control disorder, and obsessive compulsive disorder. (R. at 107.) He found that these mental impairments were not severe and caused only mild restrictions on Plaintiff's activities of daily living, maintaining social function, and maintaining concentration, persistence, and pace.  (R. at 107.)  To support his findings, the ALJ pointed to statements Plaintiff made on his function report, Dr. Ludden's examining medical records, Dr. Turner's non-examining medical opinions, and the fact that Plaintiff had "minimal, conservative treatment through medication" with no hospitalizations or therapy.  (R. at 107-08.)  The ALJ gave great weight to Dr. Turner's opinions that Plaintiff did not have any severe mental impairments or limitations, and she gave little weight to Dr. Ludden's GAF score and to Dr. Snapp's non-consultative medical opinion because his opinion appeared "to be based primarily on [Plaintiff's] subjective complaints, which [were] not supported by the minimal mental status examination

---

[4]  Plaintiff does not argue that the ALJ failed to apply the correct standard under *Stone*. (doc. 14 at 6-8.)

findings included in the record." (R. at 108-09.) She ultimately found that Plaintiff's "limitations and restrictions result[ed] primarily from his physical, as opposed to mental, impairments." (R. at 108.)

Plaintiff argues that the ALJ "ignored or improperly disregarded the bulk of the evidence" on his mental impairments, specifically Plaintiff's function report, Dr. Ludden's medical opinions, and the MHMR medical records.[5] (doc. 14 at 6-8.) In his function report, Plaintiff self-reported several limitations due to his mental impairments, including that he never wanted to leave the house, avoided crowds, had poor memory and concentration, was unable to follow any written instructions at all, and was totally unable to handle stress because it gave him anxiety and panic attacks. (R. at 363, 364, 367, 368.) Despite those restrictions, he also stated that he went outside his house for "a few hours a day sometimes," went grocery shopping once or twice a month, and was able to handle his own finances. (R. at 365.) These mental limitations were not corroborated by either Dr. Ludden or the MHMR. Though both medical records showed anxiety, bipolar disorder, panic disorder, obsessive compulsive disorder, and low GAF scores (R. at 472-73, 678, 680, 703), they also showed that these disorders minimally impaired his mental functioning. Both noted that Plaintiff had a logical and goal-oriented thought process with impulse control, an "appropriate-to-speech" affect, and was well-oriented to his surroundings. (R. at 471-72, 684, 707.) They also assessed his intelligence as "estimated to be average" with an appropriate fund of knowledge and satisfactory memory and concentration. (R. at 472, 683-84, 705-06.) His remote and short-term memory were also assessed as "good." (R. at 472.) The MHMR records specifically noted that Plaintiff's anxiety,

---

[5] Plaintiff cites to several parts of the Tarrant County MHMR medical records, which were not before the ALJ, to support his argument. (doc. 14 at 6-7.) The Appeals Council did not consider most of those medical records because it was "new information about a later time" that did not affect the decision. (R. at 2.) Plaintiff does not argue that the Council improperly analyzed this evidence as new and unrelated information. (*See* doc. 14.)

mood, and bipolar disorder "improved greatly" and were "stable" when he consistently took his medication.[6]  (R. at 701, 711.)

Substantial medical evidence showed supported a finding that Plaintiff's mental impairments were under control, required limited treatment, and did not affect his ability to work.  Accordingly, the ALJ did not err in her findings on the severity of Plaintiff's mental impairments, and remand is not required on this issue.  *Vaughan v. Colvin*, No. 3:13-CV-2924-BH, 2014 WL 4907235 at *11 (N.D. Tex. Sept. 30, 2014) (finding no error when the ALJ found that the plaintiff's mental impairments were non-severe because the conditions appeared "sporadically" in the record and no examining physician imposed any limitation as a result of the plaintiff's conditions); *see also Sweeten v. Astrue*, No. 3:11–CV-0934–G–BH, 2012 WL 3731081 (N.D. Tex. Aug. 13, 2012) (finding no error in the ALJ's failure to consider anxiety as a severe impairment where the medical records showed only an occasional display of symptoms and a lack of treatment for anxiety).

**D.**     **RFC Finding**

Plaintiff next argues that the physical limitations in his determined RFC are not supported by substantial evidence.  (doc. 14 at 9-11.)

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations.  20 C.F.R. § 404.1545(a)(1).  It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).  An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by

---

[6]  In his reply, Plaintiff points to medical records from Mr. Weber and the MHMR to argue that he was not improving with treatment.  (doc. 16 at 3-4.)  These records, however, only show that Plaintiff experienced symptoms primarily because he ran out of his Xanax prescription and was unable to get a refill due to the cost.  (R. at 661, 678.)

treating physicians or other acceptable medical sources.  20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184 at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir.1985).  The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists.  *See* SSR 96–8p, 1996 WL 374184 at *1.  The ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision or all the evidence that he rejected.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.  *Leggett*, 67 F.3d at 564.  Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings."  *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted).  The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision.  *Id.*  Courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence[.]"  *See Johnson*, 864 F.2d at 343 (citations omitted).

Here, the ALJ determined that Plaintiff retained the RFC to perform less than the full range of light work with the following limitations: he could lift and carry 20 pounds occasionally and 10

pounds frequently; could stand, walk, and sit for 6 hours during an 8-hour workday; could push and pull frequently; could operate foot control frequently; could climb stairs, ramps, ladders, ropes, and scaffolds occasionally; could stoop, bend, balance, crouch, kneel, and crawl frequently; could perform overhead reaching and reaching in all directions frequently; and could perform handling and fingering frequently.  (R. at 109.)  When determining this, the ALJ gave some weight to the SAMCs' opinions and little weight to the ME's and Dr. Patel's opined functional limitations because they were inconsistent with the "generally normal objective findings and minimal treatment noted throughout the record."  (R. at 112.)

Plaintiff argues that the ALJ should have adopted more restrictive physical limitations consistent with the ME's testimony and Dr. Patel's consultative medical opinion.  (doc. 14 at 9-10.) The ME "reasonably agree[d]" with Dr. Patel's medical findings and opined that Plaintiff was limited to walking only 4 hours out of an 8-hour workday, occasionally pushing and pulling, occasionally handling and fingering, and lifting only 10 pounds occasionally.  (R. at 131.)  Dr. Patel's overall impression was that Plaintiff could only occasionally handle, feel, grasp, finger, bend, stoop, crouch, and squat.  (R. at 479-80.)  As noted by the ALJ, the ME's and Dr. Patel's opinions regarding limitations were more severe than, and inconsistent with, Dr. Patel's own test results, which showed that Plaintiff had normal range of motion in all major muscle groups with only minor restrictions in his right wrist.  (R. at 478-79.)  Dr. Patel's medical opinions also contradict other medical findings from examining physicians, including Mr. Weber's medical records, which showed that Plaintiff's wrists had mild restrictions but no abnormal musculoskeletal or neurological findings, (R. at 453-58), and Plaintiff's records from the Hunt Regional Medical Clinic, which similarly showed that he had mild swelling in his upper extremities but was otherwise normal to inspection

and could move "quickly and easily"  (R. at 494, 513).

Substantial evidence exists to support the ALJ's findings on Plaintiff's physical limitations in the RFC, and the ALJ did not err by rejecting the ME's and Dr. Patel's medical opinions on Plaintiff's limitations.  As the trier of fact, the ALJ was entitled to weigh the evidence against other objective findings, including the opinion evidence available and the record as a whole.  *See Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). Accordingly, a reviewing court must defer to the ALJ's decisions.  *See Leggett*, 67 F.3d at 564. Regardless, the ALJ's RFC decision can be supported by substantial evidence even if he did not specifically discuss all the evidence that supported his decision or all the evidence that he rejected. *See Falco*, 27 F.3d at 164. To the extent that Plaintiff complains of the failure to include more restrictive physical limitations in the RFC, the ALJ did not err, and remand is not required on this issue.

### III. RECOMMENDATION

The Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on this 24th day of February, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

19